IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LYNN MOSTOLLER, *as Special*
*Administrator of the Estate of*
*Carlos Velazquez, Deceased,*

      Plaintiff,

v.                                                                                  No. 1:22-cv-00687-JHR-SCY

USAA LIFE INSURANCE
COMPANY,

      Defendant,

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendant USAA Life Insurance Company's Motion to Dismiss Plaintiff's Original Complaint [Doc. 5] ("Motion"). Having considered the briefing and relevant law, the Court grants the Motion in part and denies it in part. Counts I, II, III, and IV are dismissed; Count V, "Negligent Misrepresentation," is not.

## I.   <u>INTRODUCTION</u>

This case examines the duties insurers owe to decedents who bought life insurance in New Mexico. Typically, insurers must pay death benefits to the beneficiary named by the insured in the policy. Entitlement to those benefits, however, can be limited by policy language and state statutes. New Mexico imposes common-law duties on the insurer to act in good faith and deal fairly with the insured, but those duties do not override clear policy language. Businesses also have a common-law duty not to deceive others knowingly or recklessly in the course of business. Breaching these duties can make the insurer liable for breach of contract, breach of the duty of good faith and fair dealing, acting in bad faith, and negligent misrepresentation. So, if an insurer misrepresents to the representative of a deceased insured that

1

the insured's estate will receive a death benefit, but the insured's estate is not actually entitled to that death benefit, what claims can the representative bring against the insurer?

In this case, only negligent misrepresentation. Mostoller, as representative of the estate of Carlos Velazquez, alleges that USAA breached each of the duties listed above by denying a claim for benefits and misrepresenting what benefits Carlos's estate was owed. But when her allegations are read alongside the contract Carlos signed, she alleges only that USAA obeyed the terms of the contract and made misrepresentations to her in the process. As pled, this is enough to let her proceed with her negligent misrepresentation claim, but no others. The Court thus grants the Motion in part and denies it in part.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 2004, Carlos and Marilyn Velazquez purchased a life insurance policy from USAA. [Doc. 5-1, p. 7].[2] The policy had two parts – a primary policy insuring Carlos's life at $250,000.00, and a "rider" insuring Marilyn's for the same amount. *See id.* at 7, 9. The terms of the primary policy and the rider were similar, the main differences being which life was insured and who were the respective beneficiaries. *See generally id.* Each part named "primary" beneficiaries, first in line to receive the death benefit, and a "contingent" beneficiary, who would receive the death benefit if the primary beneficiaries died before the insured. *See id.* at 16, 20. The rider insuring Marilyn's life named Carlos and the couple's first son, Roberto, as primary

---

[1] The factual statements in this section reflect Mostoller's allegations and admissions, taken as true for purposes of the Motion. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). The Court makes no findings as to the accuracy of or existence of evidence to support her claims.

[2] In motions to dismiss, district courts may consider "documents incorporated into the complaint by reference" when "'the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)) (quoting *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007)) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)). Mostoller did not attach a copy of the Velazquez policy to her complaint, but USAA attached a copy to its Motion. *See* [Doc. 5-1]. The policy is central to Mostoller's claims, *see* [Doc. 1-1], neither party disputes its authenticity, and both parties refer to its contents in briefing. *See generally* [Docs. 5, 18, 22]. The Court thus considers the policy and its contents alongside the pleadings.

beneficiaries, and Maria de la Luz Ramirez Lopez ("Ramirez"), Carlos's mother, as contingent beneficiary.  *Id.* at 28.  The rider specified that Marilyn's death benefit would be paid to her estate if no beneficiaries survived her.  *See id.*  Sometime later, Carlos and Marilyn had a second son, Adrian, who was not added as a beneficiary on the policy.  [Doc. 1-1, p. 5]; *see* [Doc. 5-1, pp. 27–28].

In the early hours of December 25, 2019, Carlos murdered Marilyn, Roberto, and Adrian, then took his own life.[3]  [Doc. 1-1, p. 5]; [Doc. 18, p. 2].  The Velazquez family's bodies were found and identified by relatives later that day.  Katy Barnitz, *Vigil honors Rio Rancho mother, sons who died on Christmas Day*, Albuquerque Journal (Jan. 6, 2020, 7:04 AM EST), https://plus.lexis.com/api/permalink/365ae4bc-41ba-4313-803c-e0fe94e06110/?context=1530671.

The process of marshaling the Velazquez estate began in 2020.  Edwin Quinones was appointed personal representative of Marilyn's estate.  *See* [Doc. 1-1, p. 5].  Quinones's lawyer contacted USAA and, in June, asked that no distributions be made related to the Velazquez estate until a court could determine rightful beneficiaries.  *Id.*  The next day, USAA responded with requests for documentation proving the deaths and stating that "[i]n the interim, any claim for proceeds will remain pending."  *Id.*  In late August, Plaintiff Lynn Mostoller was appointed Special Administrator of Carlos's estate.  *Id.* at 6.  Mostoller began corresponding with USAA in September and, by mid-November, USAA confirmed that it received all documentation necessary to substantiate the deaths of the Velazquez family.  *Id.*  Meanwhile, unbeknownst to

---

[3] The Velazquezes' USAA policy, like many life insurance policies, excluded coverage where the insured committed suicide, but only if suicide happened within two years of the policy's effective date.  *See* [Doc. 5-1, p. 15].  Neither party argues that the exclusion has any effect on this case.

Mostoller, Ramirez filed a claim with USAA in October as contingent beneficiary to Marilyn's rider.  *Id.* at 8; [Doc. 5, p. 3].

     Surviving heirs and beneficiaries of the Velazquez estate began trying to settle their claims in December 2020.  An unsuccessful mediation was first held December 8.  [Doc. 1-1, p. 6].  On December 10, USAA told Mostoller that Carlos's death benefit from the primary policy would go to Carlos's estate and "represented" that Carlos's estate would also receive Marilyn's death benefit from the rider.  *Id.*  The same day, Mostoller told Quinones that Carlos's estate would receive Carlos's death benefit and, seemingly for the first time, about the existence of the rider insuring Marilyn.[4]  *Id.*

     Money started changing hands in January 2021.  On January 4, USAA paid Ramirez at least $250,000.00 in satisfaction of her claim as a contingent beneficiary to the rider.  *Id.* at 8; [Doc. 5, p. 3].  Neither Ramirez nor USAA told Mostoller or Quinones about this payment. [Doc. 1-1, p. 8].  On January 7, beneficiaries to the Velazquez estate entered into a settlement agreement amongst one another under which Ramirez would receive $241,279.00, a portion of which would come from another life insurance policy the Velazquezes purchased from Prudential Life.  *Id.* at 7.  The agreement stated that all other assets, including Marilyn's death benefit under the USAA policy, were to be marshaled by Mostoller and distributed to Marilyn's parents.  *Id.*  In late February, Mostoller had the Prudential Life money wired to Ramirez as agreed.  *Id.*

     The conflict between Mostoller's plans and USAA's actions came to a head in March 2021.  USAA sent Mostoller a claim form for Carlos's life insurance policy on March 9.  *Id.*  On

---

[4] Mostoller's complaint is unclear about when she or anyone else first learned about the Velazquezes' USAA policy or its primary and rider components.  It is also unclear about the chronological order of the events on December 10, 2020, and the nature of the "representations" USAA made to suggest Carlos's estate would receive Marilyn's death benefit.

March 15, Mostoller filled out the form and returned it with a cover letter asking about Marilyn's death benefit under the rider. *Id.* at 7–8. The next day, USAA told Mostoller that Marilyn's death benefit was paid to Ramirez because she was the contingent beneficiary and "admitted it had previously represented to Plaintiff Mostoller benefits would go to Decedent Carlos Velazquez's Estate." *Id.* at 8. Over the next week, USAA informed Mostoller that it received Ramirez's claim in October 2020, settled the claim on January 4, 2021, and paid Ramirez the full value of Marilyn's death benefit plus interest. *Id.*

Mostoller sued on behalf of Carlos's estate in New Mexico state court in August 2022, alleging that USAA not only did not satisfy its duties to the Velazquez estate as an insurer but also made numerous misrepresentations during its process. *Id.* at 4. In September, USAA invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332 and removed the state case to federal court. *See* 28 U.S.C. §§ 1441, 1446(b)(2)(B) (removal to federal court permitted within thirty days of service of process); [Doc. 1, pp. 1–2]. Later that month, USAA filed the present Motion to Dismiss Plaintiff's Original Complaint. [Doc. 5]. Mostoller responded in November, [Doc. 18], and USAA replied in December, completing briefing. [Docs. 21, 22]. The parties consented to my presiding. *See* [Docs. 3, 9, 12].

## III.   **LEGAL BACKGROUND**

Mostoller alleges four counts against USAA.[5] First, she asserts USAA acted in bad faith toward Carlos's estate during the claims process. [Doc. 1-1, pp. 9–10]. Second, she asserts USAA breached an implied covenant of good faith and fair dealing owed to the estate of a policy owner. *Id.* at 10–11. Third, Mostoller claims USAA breached its insurance contract with the Velazquezes by failing to honor her request for payment under the policy. *Id.* at 11–13. Finally,

---

[5] Mostoller originally alleged five counts, but voluntarily dismissed Count IV in her response to the Motion to Dismiss. [Doc. 18, p. 9]. The Court thus dismisses Count IV with prejudice.

Mostoller contends that USAA negligently misrepresented that Carlos's estate would receive the rider benefit when USAA knew or should have known that the benefit would actually be paid to Ramirez, causing the estate, in reliance, to pay other funds to Ramirez which it would not otherwise have paid. *Id.* at 15. USAA moves to dismiss each count under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. 5, pp. 6–7, 9–10]. The Court discusses its application of New Mexico law and applicable standards for dismissal below.

a. *Application of State Law in Federal Court*

Under the *Erie* doctrine,[6] federal courts exercising diversity jurisdiction generally apply the forum State's substantive law and federal procedural law. *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). Mostoller's claims arise under New Mexico common law, so the Court follows that approach in this case. *See* [Doc. 1-1, pp. 9–15]. A State's substantive law is established by its statutes and the holdings of the State's high court. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076–77 (10th Cir. 2007) (applying an *Erie* doctrine analysis to a state statute and the forum State's courts' interpretation of it); *Brady v. Maryland*, 373 U.S. 83, 90 (1963) ("[W]hen we explore state law . . . state courts, state agencies, and state legislatures are its final expositors under our federal regime"). If neither state statutory nor common law squarely addresses an issue in the case, the Court must make a prediction, called an "*Erie* guess," as to how the State's high court would rule on it.[7] *Stickley*, 505 F.3d at 1077. Those "guesses" draw on the forum State's analogous high court decisions, lower appellate court decisions, federal decisions, and "the general weight and trend of

---

[6] Established in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[7] Federal courts also have discretion to certify undecided state law questions to the State's high court according to procedures provided by state law. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 35 (10th Cir. 2021); Rule 12-607 NMRA.

authority." *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018)

(quoting *Sapone v. Grand Targhee, Inc.*, 208 F.3d 1096, 1100 (10th Cir. 2002)).

> b. _Dismissal under Rules 12(b)(1) and 12(b)(6)_

Federal Rule of Civil Procedure 12(b) is a vehicle by which parties can ask courts to

dismiss claims.  Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction[.]"  Fed.

R. Civ. P. 12(b)(1).  Courts generally accept as true the allegations in the complaint to determine

if those facts support finding jurisdiction.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir.

2009).  One prerequisite of federal subject matter jurisdiction is that the plaintiff has standing to

bring her claims.  *See W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293,

1296 (10th Cir. 2023).  Plaintiffs have standing when, among other things, they have suffered an

"injury in fact" that a favorable judgment will redress.  *Id.* (quoting *TransUnion LLC v. Ramirez*,

141 S. Ct. 2190, 2203 (2021)).  When the plaintiff lacks standing to bring a claim, the court lacks

subject matter jurisdiction to hear the claim and must dismiss it.  *See W. Watersheds Project*, 62

F.4th at 1296.  "A plaintiff generally bears the burden of demonstrating the court's jurisdiction to

hear his or her claims."  *Gonzagowski v. United States*, 495 F. Supp. 3d 1048, 1085 (D.N.M.

2020) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998)).

Parties can also ask that claims be dismissed because of the plaintiff's "failure to state a

claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  As with 12(b)(1) motions,

courts considering 12(b)(6) motions must accept as true all well-pleaded allegations in the

complaint, viewing them in the light most favorable to the plaintiff and drawing all reasonable

inferences in her favor.  *Smith*, 561 F.3d at 1098.  To prevail against the motion, the plaintiff's

complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  It is not enough to plead facts "'merely consistent with' a defendant's

liability[.]"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Further,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice" and must be dismissed.  *Iqbal*, 556 U.S. at 678.

c.  <u>*Contract Claims, Implied Covenants of Good Faith, and Bad Faith Actions*</u>

Actions for breach of contract, breach of the implied covenant of good faith and fair

dealing, and "bad faith" are different but related causes of action in New Mexico.  A plaintiff can

prove that a defendant is liable for breach of contract by showing the parties had a contract and

that the defendant failed to perform a contractual obligation when performance was due.  *See* UJI

13-822 NMRA.  Plaintiffs often do this by alleging that the contract contained a provision

imposing some express duty on the defendant and the defendant did not fulfill the duty.

Although insurance policies are different from many other contracts, the same rules of

construction apply to their interpretation as would apply to any other contract.  *Ponder v. State*

*Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033 ¶ 11, 12 P.3d 960, 964.

Actions for breach of the covenant of good faith and fair dealing are a corollary to

standard breach-of-contract claim and rely on duties merely implied by the agreement.  Under

New Mexico common law, all contracts carry an implied covenant of good faith and fair dealing.

*Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040 ¶ 7, 188 P.3d 1200, 1203.  This

includes insurance contracts.  *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005 ¶ 12, 954 P.2d

56, 60; *see also Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056 ¶¶ 34–37, 374 P.3d 723, 732

(discussing the covenant in the insurance context).  The covenant prohibits contracting parties

from doing anything that will injure another's right to receive the benefit of the agreement.

*Sanders*, 2008-NMSC-040 ¶ 7, 188 P.3d at 1203.  Conduct barred by the covenant includes

"evasion of the spirit of the bargain . . . and interference with or failure to cooperate in the other

8

party's performance[.]"  *Id.* at ¶ 9, p. 1203 (quoting Restatement (Second) of Contracts § 205 cmt. d (1981)) (internal quotation marks omitted).  However, the covenant "cannot be used to overcome or negate an express term contained within a contract."  *Sanders*, 2008-NMSC-040 ¶ 8, 188 P.3d at 1203.

Downstream of these actions is the common law tort of bad faith.  Although the phrase "bad faith" sounds interchangeable with a breach of the covenant of good faith, bad faith actions are a different kind of claim.  *See Sloan v. State Farm Mut. Auto Ins. Co.*, 2004-NMSC-004 ¶ 13, 85 P.3d 230, 235 ("the [common law] tort of insurance bad faith is fundamentally distinct from a claim for breach of contract").  Like breach of a contract and breach of an implied covenant, bad faith actions depend on the existence of a contract.  *See Sherrill*, 2016-NMCA-056 ¶ 35, 374 P.3d at 732.  But, unlike those claims, tortious bad faith cannot arise from just any arms-length transaction.  Rather, a bad faith tort claim arises when (1) the contract creates a "special relationship" between the parties, such that one party owes the other a heightened duty of good faith; and (2) the party owing that duty refuses to perform an apparent contractual obligation for "frivolous" or "unfounded" reasons.  *See Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038 ¶ 17, 872 P.2d 852, 857 (describing the "special relationship" as it arises in the insurance context); *Chavez v. Chenoweth*, 1976-NMCA-076 ¶ 31, 553 P.2d 703, 708–09 (recognizing an insured's tort claim against an insurer for the insurer's bad-faith delay in payment of claims).

The special relationship necessary for a tortious bad faith action is created when the nature of the contract and the parties' respective bargaining positions gives one party significantly more power than the other in the context of the agreement.  *See Bourgeous*, 1994-NMSC-038 ¶ 17, 872 P.2d at 857.  Insurance contracts generally establish this relationship because "the relationship of an insurer and insured is inherently unbalanced; the adhesive nature

9

of insurance contracts places the insurer in a superior bargaining position." *Id.* (quoting *Egan v. Mut. of Omaha Ins. Co.*, 620 P.2d 141, 146 (Cal. 1979) (in bank)); *see also Sherrill*, 2016-NMCA-056 ¶ 36, 374 P.3d at 733 ("the insurance relationship . . . is characterized by elements of adhesion, public interest, and fiduciary responsibility").  New Mexico thus imposes a good faith duty on insurers which, if breached, allows policyholders and insureds to recover in tort, not just contract.  *Sherrill*, 2016-NMCA-056 ¶ 36, 374 P.3d at 733 ("The common law bad faith action sounds in both contract and tort").  Insurers are only liable for tortious bad faith, however, when their actions are "frivolous" or "unfounded."  *Chavez*, 1976-NMCA-076 ¶ 31, 553 P.2d 703, 708–09.  An insurer's actions are frivolous or unfounded if they are "arbitrary or baseless . . . lacking any support in the wording of the insurance policy or the circumstances surrounding the claim[.]"  *Sloan*, 2004-NMSC-004 ¶ 18, 85 P.3d at 237.  Bad-faith acts for which insurers can be liable in tort include refusing to pay claims, refusing to defend insureds in court, and refusing to settle within policy limits.  *See* UJI 13-1702, 13-1703, 13-1704 NMRA; *see also Sherrill*, 2016-NMCA-056 ¶¶ 37–41 (listing discrete, actionable requirements imposed on insurers by the implied duty of good faith).

> d.  *Negligent Misrepresentation*

Negligent misrepresentation is a tort in New Mexico for which defendants can be held liable if they recklessly make false representations.  *See Robey v. Parnell*, 2017-NMCA-038 ¶ 31, 392 P.3d 642, 652.  Unlike Mostoller's other three grounds for relief, it is wholly based on principles of common-law tortious negligence, not contract law.  *See Nance v. L.J. Dolloff Assocs.*, 2006-NMCA-012 ¶ 15, 126 P.3d 1215, 1219.  For the claim to succeed, a plaintiff must show:  (1) the defendant owed plaintiff a duty to disclose information with care; (2) the defendant made a material representation to plaintiff; (3) plaintiff relied on the representation;

(4) the defendant knew the representation was false or made it recklessly; and (5) the defendant intended to induce plaintiff's reliance.  *Barrington Reins. Ltd. v. Fidelity Nat'l Title Ins. Co.*, 2007-NMCA-147 ¶ 17, 172 P.3d 168, 172 (defining the defendant's duty); *Robey*, 2017-NMCA-038 ¶ 31, 392 P.3d at 652 (stating elements two through five).  Existence of a duty is a legal issue; the other elements are factual.  *Morris v. Giant Four Corners, Inc.*, 2021-NMSC-028 ¶ 10, 498 P.3d 238, 242 ("The determination of whether a duty exists is a matter of law . . ."); *see Cobb v. Gammon*, 2017-NMCA-022 ¶ 27, 389 P.3d 1058, 1069 (stating that elements two through five "must be established by a preponderance of the evidence").

## IV.   <u>DISCUSSION</u>

USAA makes three arguments to dismiss Mostoller's claims.  First, the company argues that Mostoller lacks standing to bring her breach-of-contract, bad faith, and implied covenant claims.  [Doc. 5, pp. 6–7, 9–10].  Second, it asserts that Mostoller alleges facts which show only that USAA complied with its contractual obligations and thus the complaint fails to state claims for breach of contract, bad faith, or breach of an implied covenant.  *Id.* at 7–9, 10–12.  Third, USAA argues Mostoller did not plead, and it does not owe, the requisite duties necessary for Mostoller to state a negligent misrepresentation claim.  *Id.* at 13–12.  For reasons discussed below, USAA's first two arguments prevail but its third does not.

### a.   *Lack of Standing*

#### i.   <u>Parties' Arguments</u>

USAA's standing argument hinges on the distinction between Carlos Velazquez, the policy owner, and Carlos's estate i.e., Carlos's rights and property left over after death.  The insurance policy named Carlos Velazquez as owner of Marilyn's rider and a beneficiary to the rider.  [Doc. 5-1, pp. 9, 28].  However, the rider states that Marilyn's death benefit should only

be paid to surviving beneficiaries or her estate. *See id.* at 20, 28. "Carlos's estate," USAA points out, is neither, and Carlos did not survive Marilyn by one hundred twenty hours, so he legally predeceased her and was not entitled to the rider benefit while alive. [Doc. 5, pp. 6–7]; *see also* N.M.S.A. 1978 § 45-2-702(B) ("an individual who is not established by clear and convincing evidence to have survived the event by one hundred twenty hours is deemed to have predeceased the event"). USAA thus argues that estate representative Mostoller is not a party to the contract and cannot sue for its breach. [Doc. 5, p. 7]. Nor can she, in USAA's view, sue for bad-faith or breach of the covenant of good faith and fair dealing because those causes of action depend on an underlying contract between plaintiff and defendant. *Id.* at 9–10. Since no contractual rights passed to Carlos's estate, Mostoller cannot sue and her contract-based claims must be dismissed. *Id.* at 9–10.

Mostoller counters with three arguments. First, she asserts that USAA is mischaracterizing her role as special administrator by citing cases about third-party beneficiaries when, in her view, she is claiming the role of a first-party beneficiary to the contract by pursuing "the claims and rights of the Estate, which Carlos Velazquez would have, but for his death." [Doc. 18, pp. 5, 6–8]. Second, Mostoller argues that USAA's actions and representations suggest that USAA must have believed Carlos's estate was a beneficiary to the rider and that it should now be treated as such. *See id.* at 5. Third, Mostoller argues that the Velazquezes' policy established an implied covenant of good faith and fair dealing between Carlos and USAA, and that Carlos's rights associated with that covenant are now held by Mostoller. *Id.* at 6–8. Therefore, Mostoller says, misrepresentations and bad faith denials directed at Mostoller by USAA should be treated as though USAA denied claims in bad faith and breached its covenant directly with Carlos. *Id.* at 6–8.

12

ii.  <u>Analysis</u>

The law favors USAA's position.  As discussed above, plaintiffs must suffer an injury a court can redress to have standing to bring a claim.  *W. Watersheds Project*, 62 F.4th at 1296. The requisite injury for a breach of contract claim is that at least one party, to the detriment of another's legal rights, did not conform his conduct to the terms of the agreement – that is, the contract was breached.  *See* UJI 13-822 NMRA.  Relatedly, conduct cannot breach the implied covenant of good faith and fair dealing if express, unambiguous contract language calls for that conduct.  *Sanders*, 2008-NMSC-040 ¶¶ 7–9, 188 P.3d at 1203.  Contract-compliant acts fall even farther below the threshold for injury by bad faith, as the defendant's actions must be so totally unsupported by the language and circumstances of the contract that they are "arbitrary or baseless[.]"  *Sloan*, 2004-NMSC-004 ¶ 18, 85 P.3d at 237.  At their core, the kind of injury all three of these claims exist to remedy is a harmful deviation from either the letter or spirit of an agreement.  Compliance with both is no deviation, so allegations showing only compliance allege no injury.

Mostoller's allegations, read in tandem with the Velazquez policy, show only compliance.  Mostoller alleges USAA breached the agreement, breached its implied covenant of good faith and fair dealing, and acted in bad faith by distributing Marilyn's death benefit to Ramirez instead of estate representative Mostoller.  [Doc. 1-1, pp. 8–9].  But the policy states that benefits will be paid only to surviving beneficiaries or the insured's estate.  [Doc. 5-1, p. 20]. Ramirez was the only surviving beneficiary, so when she made a claim, USAA paid it.  *Id.* at 28. Those actions followed the plain language of the contract.  USAA thus did not injure any parties' contractual rights, express or implied, and its decisions were far from "frivolous" or "unfounded."  Mostoller's contract-based claims must thus be dismissed.

Mostoller's counterarguments are unpersuasive.  She may be correct that, as special administrator of Carlos's estate, she steps into his position and holds all contractual rights Carlos would hold were he here now.  [Doc. 18, p. 5]; N.M.S.A. 1978 § 45-3-617.  But she cannot use that role to ignore the effect of Carlos's death on his contractual rights to Marilyn's death benefit.  If Carlos died any time before one hundred twenty hours after Marilyn died, and no one disputes that he did, then he is deemed deceased before Marilyn as a matter of New Mexico law, which governs the insurance contract.  If Carlos died before Marilyn (as a matter of law), then he was not a beneficiary of the contract (which benefits only certain survivors).  If Carlos was not a beneficiary, then neither is his estate.  With no right to the rider benefit, Carlos's estate holds no legal right which could be injured by USAA's decision to award the benefit to someone else.  Mostoller, as representative of the estate, thus lacks standing to bring her bad faith, breach of covenant, and breach of contract claims.

      b.  *Failure to State Claims*

          i.  Parties' Arguments

USAA argues in the alternative that Mostoller does not state claims for breach of contract, bad faith, or breach of the covenant of good faith and fair dealing because the facts alleged do not show USAA breached its agreement, nor any duties implied by it.  [Doc. 5, pp. 7–9, 10–12].  Although Mostoller says that "USAA Life breached the insurance policy contractual provisions by failing to honor Plaintiff's request for payment under the policy," [Doc. 1-1, p. 12], USAA argues that the rider contained no provisions which obligated USAA to honor that request.  [Doc. 5, p. 8].  Meanwhile, the policy had clear language entitling Martinez to Marilyn's death benefit, which USAA satisfied.  *Id.*  USAA's compliance, therefore, negates the breach element of Mostoller's breach-of-contract claim.  This reasoning also applies to

Mostoller's bad faith claim, which requires her to show that USAA denied a claim for "frivolous or unfounded" reasons, and her implied covenant claim, which requires Mostoller to show USAA prevented the contract's performance or withheld its benefits.  *Id.* at 10–12.  In USAA's view, Mostoller's allegations show the opposite – that USAA denied a claim for the well-founded reason that the claimant had no right to the benefit claimed, and that USAA performed its contractual obligations by granting the rider benefit to an entitled beneficiary.  *Id.* at 10–12. This argument also suggests that Mostoller cannot claim any contract damages because, even if awarding the death benefit to Ramirez prevented Mostoller from getting it, Mostoller never would have received the benefit to begin with.  *Id.* at 8–9.[8]

Mostoller makes three counterarguments.  First, she asserts that she can bring the breach-of-contract claim because "the rider is not a separate policy of insurance" and "does [not] change who the Named Insured was under the USAA policy—Carlos Velazquez."  [Doc. 18, p. 6]. Second, Mostoller argues that USAA's duties to act in good faith and deal fairly extended from USAA to Carlos as a policy owner.  *Id.* at 8.  Regardless of the contract language, those duties were breached when USAA dishonestly represented to Carlos's estate representative that the rider benefit would be paid to the estate.  *Id.* at 8–9.  Finally, Mostoller states that bad faith claims can be based on insurer conduct other than a refusal to pay, implying that her claim is valid even if the refusal to pay was itself contractually justified.  *Id.* at 9

---

[8] In a parallel vein, USAA also asserts that (1) the same points supporting its standing argument also negate an element of Mostoller's contract claim because, if Mostoller lacks standing because she is not a party to the contract, she has failed to allege the existence of a contract she can enforce and thus does not state a contract claim, [Doc. 5, p. 8]; and (2) even if Carlos had a valid claim to Marilyn's death benefit, he forfeited that claim by murdering her. *Id.* at 9 n.8 (citing N.M.S.A. 1978 §§ 45-2-803(B), -803(C)(1)(a)).  The Court does not directly address these arguments as the 12(b)(6) dismissal issue is resolved on the arguments discussed below.

ii.  <u>Analysis</u>

Again, the law favors USAA here.  Plaintiffs must state claims for which relief can be granted.  Fed. R. Civ. P. 8(a)(2).  Plaintiffs state claims by articulating their causes of action and alleging facts which, if true, plausibly suggest the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.  Rule 12(b)(6) does not require a plaintiff to "establish a prima facie case in her complaint," but "the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  Claims for breach of contract and breach of the implied covenant of good faith and fair dealing, however, fail if the defendant plainly complied with the agreement.  *See* UJI 13-822 NMRA, Committee Commentary ("full performance of [contractual obligations] satisfies that party's obligations under the contract and thereby constitutes a discharge"); *Sanders*, 2008-NMSC-040 ¶ 8, 188 P.3d at 1203 ("the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract").  This goes for bad faith claims as well because they require "frivolous" or "unfounded" conduct; following clear language in a contract is neither.  *Chavez*, 1976-NMCA-076 ¶ 31, 553 P.2d at 708–09; *see Sloan*, 2004-NMSC-004 ¶ 18, 85 P.3d at 237 (defining "frivolous" and "unfounded" acts taken in bad faith).

Mostoller thus fails to state contract-based claims because, as discussed above, her allegations show only that USAA complied with the terms of its agreement.  USAA performed its obligation to pay the only living beneficiary to Marilyn's rider.  This decision, and the corresponding decision not to award the benefit to Mostoller, cannot be the basis for claims that USAA breached the express or implied terms of its contract, let alone for a claim that USAA's actions were "frivolous or unfounded."

Mostoller's first counterargument misunderstands the nature of the Velazaquezes' insurance contract.  It is true that "the rider is not a separate policy of insurance" and that Carlos was owner of and a named insured on the Velazaquezes' policy.  [Doc. 5-1, p. 26]; [Doc. 18, p. 6].  These facts do not change the language of the agreement.  The policy unambiguously defines both "beneficiary" and "rider beneficiary" so that all beneficiaries must *survive* the insured to receive a death benefit.  [Doc. 5-1, pp. 16, 20].  Carlos's death less than one-hundred and twenty hours after Marilyn's thus disqualified him from receiving her death benefit.  *See* N.M.S.A. 1978 § 45-2-702(B).  A person's status as owner of and "named insured" on a policy does not entitle him to all benefits under the policy; such a reading would make naming beneficiaries superfluous.  *See Cheng v. Rabey*, 2023-NMCA-013 ¶ 19, 525 P.3d 405, 410 ("We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions") (quoting *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082 ¶ 19, 33 P.3d 651, 659 (internal quotations marks and brackets omitted)).

Mostoller's other two arguments, meanwhile, misunderstand her causes of action.  It may be true that Mostoller, as estate representative, now holds whatever rights of good faith and fair dealing were owed to Carlos.  But as discussed above, those rights did not entitle Carlos, nor his successors, to anything contrary to the language of the underlying agreement.  *Sanders*, 2008-NMSC-040 ¶ 8, 188 P.3d at 1203.  And although bad faith claims can be based on acts other than the failure to pay, Mostoller has not pointed to any conduct by USAA so egregious that it could be called "frivolous or unfounded."  Mostoller thus fails to state claims for bad faith, breach of the covenant of good faith and fair dealing, and for breach of contract.

c. *Negligent Misrepresentation*

i. Parties' Arguments

Finally, USAA argues that Mostoller cannot sue for negligent misrepresentation because she did not, and cannot, plead an appropriate duty.  According to USAA, Mostoller's negligent misrepresentation claim depends on USAA owing Mostoller a duty to disclose information about the rider and USAA's dealings with Ramirez.  *See* [Doc. 5, pp. 13–14].  Such a duty, the company admits, can exist between parties to a contract or an insurer and insured.  *Id.* at 14 (citing *Palmer v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 343590 at *10 (D.N.M. Feb. 4, 2022)).  But, as with its standing arguments, USAA asserts that "Carlos's estate" is none of those with respect to the rider, so no duty to disclose existed.  [Doc. 5, p. 14].  Further, USAA points out that Mostoller pled only that USAA failed to disclose its dealings with Ramirez, not that USAA owed an affirmative duty to so disclose, so the pleading is insufficient on its face.  *Id.* at 13–14; *see also* [Doc. 1-1, p. 15].

Mostoller counters that the requisite duty for a negligent misrepresentation claim does not depend on the existence of a contract.  [Doc. 18, p. 10].  She relies on cases and form jury instructions to assert that, rather, USAA's duty was to not make "material misrepresentations" to people with whom it had "a professional or business relationship[.]"  *See id.* at 9–11.  In Mostoller's view, USAA's dealings with her while marshaling the Velazquez estate established this relationship and USAA's alleged representation that Marilyn's death benefit would pass to Carlos's estate was a material misrepresentation.  *Id.* at 9–11.  Therefore, she argues, she states a claim for negligent misrepresentation.

ii.  <u>Analysis</u>

The parties do not frame it in *Erie* doctrine terms, but USAA's duty argument raises a question of New Mexico state law for which there is no on-point precedent or statute.  Making an *Erie* "guess," the Court finds that USAA owed a duty to exercise due care for the truth in its communications with Mostoller as representative of Carlos's estate.  Mostoller pled facts which, if true, implicate that duty and plausibly satisfy the elements of negligent misrepresentation, so the claim cannot be dismissed.

The Supreme Court of New Mexico has not squarely addressed what duties insurers owe to representatives of policy owners' estates, but an ample body of case law provides guidance.  Typical tort claims require that the defendant have owed plaintiff a duty.  *Hernandez v. Parker*, 2022-NMCA-023 ¶ 15, 508 P.3d 947, 953.  New Mexico common law imposes a general duty on all persons, when affirmatively acting, to act with ordinary care for the safety of others and their property regardless of contractual privity.  *Berlangieri v. Running Elk Corp.*, 2003-NMSC-024 ¶ 41, 76 P.3d 1098, 1110; UJI 13-1604 NMRA.  People owe similar duties in business communications.  Specifically, they owe a duty to convey information with due care for the truth, and this duty extends from the conveyor of information to anyone he deals with in the course of business—again, regardless of privity.  *See Stotlar v. Hester*, 1978-NMCA-067 ¶ 12, 582 P.2d 403, 406 (quoting Restatement (Second) of Torts § 552 (Am. L. Inst. 1977)).  New Mexico's common law of insurance reflects this.  In the context of uninsured/under-insured motorist policies, the Supreme Court of New Mexico held that insurers have affirmative duties to disclose coverage information not only to class-one insureds, but also to class-two insureds who

benefit from the insurance policy but are not party to the underlying contract.[9]  *See Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005 ¶ 17, 202 P.3d 801, 806–07.

In total, case law suggests that insurers owe a duty to exercise reasonable care for the truth when communicating with policy owners and their representatives about the contents of and benefits available under the owner's policy.  The duty not to negligently misrepresent information arises, at the very least, when a person makes representations in the course of business to guide the business decisions of another.  *See Stotlar*, 1978-NMCA-067 ¶ 12, 582 P.2d at 406.  Insurers are plainly doing business when they communicate with the representative of a policy owner, alive or dead, about the insurance benefits due to the policy owner or his estate, and it is hard to imagine the purpose of such communications if not to guide the representative's decisions.  It would not make sense to hold that the duty to exercise reasonable care in making these communications evaporates because the correct information to convey is that the policy owner's estate is not owed benefits.  USAA was engaged in the regular business of a life insurer when it communicated with Mostoller about benefits due to Carlos's estate, and its representations were likely intended to guide her decisions as estate representative; USAA thus owed Mostoller a duty to exercise reasonable care in making those communications.

USAA's counterarguments are, at bottom, arguments to require contractual privity between parties to negligent misrepresentation claims when the underlying subject of the representations is an insurance contract.  The arguments fail.  It is true that "Carlos's estate" is not a party to the contract, nor is it a beneficiary entitled to Marilyn's death benefit under the

---

[9] "Class-one" and "class-two" are terms for the kinds of people covered by an uninsured/under-insured motorist insurance policy.  *See Morro v. Farmers Ins. Grp.*, 1998-NMSC-006 ¶ 5, 748 P.2d 512, 513–14.  A class-one insured is a named insured on the policy, often the policy owner.  *Id.* at ¶ 5, pp. 513–14.  A class-two insured is anyone else who is covered by the policy because they were in the vehicle when the wreck happened and is usually someone with no contractual relationship with the insurer.  *Id.* at ¶ 5, p. 514.

rider.  *See* [Doc. 5-1].  But the duty to exercise reasonable care in communications does not depend on a contractual relationship or entitlement to benefits – it depends on whether the communication implicates the defendant's pecuniary interest.  *See* Restatement (Second) of Torts § 552 cmt. d (Am. L. Inst. 1977).  Indeed, the idea that contractual privity is necessary to make a tort claim has long been rejected in New Mexico.  *See Steinberg v. Coda Robberson Constr. Co.*, 1968-NMSC-055 ¶ 7, 440 P.2d 798, 799.  Imposing such a requirement here would also be at odds with the New Mexico Supreme Court's general position that insurers' duties are not limited only to those with whom they have signed contracts.  *Cf. Salas*, 2009-NMSC-005 ¶ 17, 202 P.3d at 806–07.  The Court thus rejects USAA's argument.

Having established that USAA owed a duty to exercise reasonable care for the truth in its communications to Mostoller, her allegations plausibly satisfy the factual elements of her claim. She alleges:  a "material representation" (*see* [Doc. 1-1, p. 6] (alleging USAA represented that Marilyn's death benefit would be distributed to Carlos's estate)); reliance on that representation in settlement discussions, (*id.* at 7); facts suggesting USAA knew or was reckless with the truth (*see id.* at 8 (alleging that USAA received Ramirez's claim and distributed Marilyn's death benefit concurrent with its representations to Mostoller)); and facts suggesting USAA intended Mostoller to rely on those representations.  *Id.* at 5–6.  Her allegations thus state a claim that is plausible on its face and cannot be dismissed under Rule 12(b)(6).

**V.**     **CONCLUSION AND ORDER**

**IT IS THEREFORE ORDERED** that Defendant USAA Life Insurance Company's

Motion to Dismiss Plaintiff's Original Complaint [Doc. 5] is **GRANTED** as to Counts I, II, III,

and IV, and **DENIED** as to Count V.

_____

Jerry H. Ritter
U.S. Magistrate Judge